AO 243 (Rev. 5/85)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 ℂ𝕠𝕦𝕣𝕥 | District  District of Puerto Rico | |
|---|---|---|
| Name of Movant  Epifanio Matos Luchi | Prisoner No.  #31216-069 | Case No.  3:07-cr-00208-JAF |
| Place of Confinement  FCI Fort Dix, P.O. Box 38, Fort Dix, N.J. 08640. | | |

UNITED STATES OF AMERICA          V.          EPIFANIO MATOS LUCHI

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack  U.S. District Court for the District of Puerto Rico, 150 Carlos Chardon Ave., San Juan, P.R. 00918.

2. Date of judgment of conviction  Sept. 9, 2008

3. Length of sentence  235 months (19 yrs. & 7 months).

4. Nature of offense involved (all counts)  Count One; Conspiracy to possess with intent to distribute five kilograms or more of cocaine, on board a vessel subject to the jurisdiction of the U.S., in violation of Title 46 U.S.C. §§70502(c)(1)(A), 70503(a)(1), 70504(b)(1), & 70506(b). Count Two; Aiding and Abetting to possess with intent to distribute 5 kilograms or more of cocaine, on board a vessel subject to the jurisdiction of the U.S., in violation of Title 46 U.S.C. §§ 70502(c)(1)(A), 70503(a)(1), 70504(b)(1) & Title 18 U.S.C. §2.

5. What was your plea? (Check one)
   (a) Not guilty  ☒
   (b) Guilty  ☐
   (c) Nolo contendere  ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☒
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☐  No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒  No ☐

AO 243
REV 6/82

9. If you did appeal, answer the following:

   (a) Name of court  U.S. Court of Appeals for the First Circuit.

   (b) Result  Conviction Affirmed.

   (c) Date of result  U.S. v. Matos, 627 F.3d 1 (1st Cir., Dec. 1, 2010).

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

   (a)(1) Name of court _____

   (2) Nature of proceeding _____

   _____

   (3) Grounds raised _____

   _____

   _____

   _____

   _____

   (4) Did you receive an evidentiary hearing on your petition, application or motion?
   Yes ☐ No ☐

   (5) Result _____

   (6) Date of result _____

   (b) As to any second petition, application or motion give the same information:

   (1) Name of court _____

   (2) Nature of proceeding _____

   _____

   (3) Grounds raised _____

   _____

   _____

   _____

   _____

AO 243
REV 6/82

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____

(6) Date of result _____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____

_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result _____

(6) Date of Result _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1) First petition, etc.          Yes ☐ No ☐
(2) Second petition, etc.       Yes ☐ No ☐
(3) Third petition, etc..        Yes ☐ No ☐

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

(4)

AO 243
REV 6/82

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: WHETHER MOVANT'S COUNSEL WAS INEFFECTIVE FOR NOT PLEADING FOR A CONTINUANCE IN ORDER TO PRODUCE A SUBPOENAED WITNESS?

Supporting FACTS (tell your story *briefly* without citing cases or law: Because this Court granted a subpoena of Dominican Republic's official Carmelo Matos Rodriguez. During the trial proceeding the above mentioned subpoenaed witness was unavailable to testify, due to an error by the defense, in the information needed for traveling purposes. The First Circuit held the burden to produce the witness lied on the defense, since no continuance was requested. In support, see Memorandum of Law attached hereto.

B. Ground two: WHETHER MOVANT'S COUNSEL WAS INEFFECTIVE FOR NOT PLEADING FOR A SUBSTANTIVE DOWNWARD DEPARTURE TO THE COURT WHEN THE SENTENCING RECORD DEMONSTRATES MERIT?

Supporting FACTS (tell your story *briefly* without citing cases or law): As the First Circuit held this Court to understand its authority under Booker. During the Sentencing Hearing, this Court held, because no argument has been submitted, for considering a substantive departure, said tailoring of the procedural sentence was not available. However, Movant submits that counsel could requested said departure, by arguing how the 235 sentece presented a disparity between the defendants, since this Court determined that the other defendants lied on the stand, yet all received the same sentence.

C. Ground three: (see Memorandum of Law, supra); WHETHER MOVANT'S APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT HAVING PURSUED FURTHER REVIEW OF THE STATUTORY ONTERPRETATION ISSUE?

Supporting FACTS (tell your story *briefly* without citing cases or law): Because the First Circuit held the word "aboard" to mean alogside of, for purposes of determining whether a boat, on high seas, is a vessel without nationality", pursuant to Title 46 U.S.C. §70502(d)(1)(B), even though the Court concedes there to be two meanings, and because an informal consent to

AO 243
REV 6/82

transfer the Movant from the Dominincan cutter to the U.S. authorities
the First Circuit held, is an open question. Movant's counsel shoul have
competently pursued further review of the debatable matter. See Memorandum
of Law.

D. Ground four: _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: The previously mentioned grounds were not presented due to counsel's ineffective demeanor in not reasonably exercising his Sixth Amendment duty to effective assistance of counsel. Had counsel moved for a continuance at trial, due to the fact that a subpoenaed witness was having difficulties with traveling arrangements; Had counsel, at Sentencing, moved the Court to consider the Title 18 USC §3553(a) factors for a non-guideline sentence, when the established record indicates the Court was willing to depart from the stipulated guideline; Had Appellate Counsel continued to pursue review of the case on a rehearing en banc or writ of certiorari, based on the expressed reasons there is a reasonable probability that the outcome of the proceeding would have

14. Do you have any petition or appeal now pending in any court as to the judgment under attack? been different.
    Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a) At preliminary hearing Carlos A. Vazquez-Alvarez, Esq., P.O. Box 364431, San Juan

   P.R. 00936-4431, (787)764-6752; carlosvazquezlaw@yahoo.com.

   (b) At arraignment and plea Joseph C. Laws, AFPD, Patio Gallery Bldg., 241 Franklin D.

   Roosevelt Ave., Hato Rey, P.R. 00918-2441, (787)281-4927; joseph-laws@fd.org

   (c) At trial Ricardo Rafael Morel, Esq., PHV, 6 Soulice Place, New Rochelle, N.Y.

   10804, (914)471-5884; drmorel@optline.com.

   (d) At sentencing Ricardo Rafael Morel, supra.

   _____

AO 243
REV 6/82

(e) On appeal ___Ricardo Rafael Morel, ante._____

(f) In any post-conviction proceeding ___N/A_____

(g) On appeal from any adverse ruling in a post-conviction proceeding ___N/A_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__11-30-11_____.
(date)

_Epifanio Matos L_
Signature of Movant

(7)

IN THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF PUERTO RICO

EPIFANIO MATOS LUCHI,                      :
                  Movant,                  :

              v.                           :   Case No. _____

UNITED STATES OF AMERICA,                  :   (07-cr-00208-JAF)
                  Respondent.              :

                                           :

_____X

MEMORANDUM OF LAW
IN SUPPORT OF §2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT CONVICTION/SENTENCE

COMES NOW, the Movant, Epifanio Matos Luchi, **propia persona in
sui juris**, in a timely fashion moves the presiding Court, pursuant
to Title 28 U.S.C. §2255, for constitutional violations, to review
whether Movant's counsel, Ricardo Rafael Morel (Morel), provided
ineffective assistance of counsel when failing to plead for a
continuance at trial, in order to secure the available testimony
of a subpoenaed witness; Whether counsel Morel's performance at
the Sentencing proceeding was deficient by not moving the
presiding Court to consider the Title 18 U.S.C. §3553(a) factors
for a non guideline sentence, when this Court indicated that it
was willing to consider the above cited factors; And whether
counsel Morel was ineffective for not pursuing further appellate
review of the case, under the charging statute's legislative intent
interpretation, when the issue is debatable on its merits.

Because the above mentioned grounds are before this Court under
an ineffective assistance of counsel claim, pursuant to the Sixth

Amendment to the U.S. Constitution, of which counsel Morel's actions and omissions have prejudiced the Movant to a fair process of law, pursuant to the Fifth Amentment to the U.S. Constitution's Due Process of Law Clause. The Movant respectfully submits the instant §2255 pleading with the present Memorandum of Law in support of the Grounds and argument brought forth to the presiding Court for a collateral review.

## STATEMENT OF THE CASE

Substantial[1]:

    a. <u>Nature of the Case</u>

The case before this Court stems from a drug trafficking offense conduct where Movant and other conspirators were found guilty, by a Jury Trial, for Conspiracy to possess cocaine with intent to distribute on board a vessel subject to the jurisdiction of the U.S., see Title 46 U.S.C. §§70502(c)(1)(A), 70503(a)(1), 70504(b)(1), & 70506(b), [Doc. No. 14].

The facts revealed that on May, 2007 U.S. Coast Guard officers, stationed on a British ship (HMS Ocean), deployed a helicopter for the investigation of a low-flying aircraft within the patrolled waters, see U.S. v. Matos-Luchi 627 F.3d 1 (1st Cir. 2010). Accordingly, the U.S. Coast Guard personnel observed the above mentioned aircraft drop several bale-shaped packages on

---

1] Being the majority of the procedural information is provided for in the §2255 motion/form, the Movant, in order to avoid unnecessary duplication, will only submit in the instant <u>Memorandum of Law In Support</u> the substantial facts of the case, in this matter. Additionally, Movant will refer to the established record on the docket entries, as [Doc. No. ].

the water, thirty-five miles from the coast of the Dominican Republic.

Consequently, a small boat, propelled by an outboard motor, known as a "yola" [2], approached the drop site and its crew began to retrieve the foregoing packages. Upon suspecting illegal drug trafficking on high seas, the officers descended the helicopter. Upon descending, the "yola" crew jettisoned the mentioned bales and fled the scene.

A U.S. Customs & Border airplane followed the "yola" as it proceeded north towards the Dominican Republic. The "yola", seemingly, experienced engine problems and stopped at a few miles off the Dominican coast. At the request of U.S. Customs, a Dominican Coast Guard cutter was deployed in order to retrieve the "yola" and its crew. The three man crew were taken on board the Dominican cutter, while the "yola" was tied to the cutter's stern.

Several hours later, after the above mentioned "yola" crew was seized by the Dominican authorities, with the permission of the Dominican authorities, U.S. Coast Guard officials visited the cutter and questioned the "yola" crew.

Upon determining that the "yola" crew was subject to the jurisdiction of the U.S., the U.S. Coast Guard, on instructions from their superiors, detained the "yola" crew and transferred them to HMS Ocean, see Matos-Luchi, ante, 2-3.

---

[2] According to both the Dominican and U.S. officials in charge of patrolling the waters, where the offense conduct occurred, "yola's" are commonly used for fishing, in the Caribbean, [Doc. No. 140, p. 144-45] & [Doc. No. 143, p. 13-14].

b. Grand Jury Minutes

Upon having been charged with the previously mentioned charges, Movant pleaded to the Court for access to the Grand Jury Minutes, see U.S. v. Matos-Luchi 529 F. Supp.2d 292 (D.P.R. 2007). The reason for pleading so is based on Movant's position that a "yola" is not a go-fast vessel, which is typically used for drug tafficking operations on high seas. This Court denied the above mentioned pleading.

c. Court's Disposition of the Trial

Upon having submitted motions to dismiss the charges for jurisdictional purposes, this Court holding that the motion, claiming in particular that there was no proof to conclude how the "yola" crew was onboard a "vessel without nationality", see 46 U.S.C. §§70502(c)(1)(A) & 70503(a)(1), was to be held in abeyance. Thus, the Movant proceeded to Jury Trial.

The Jury, consequently, finds Movant and the rest of the "yola" crew guilty as charged. At Sentencing, based on a procedural United States Sentencing Guidelines (USSG) calculation, the Movant is sentenced to a low-end 235 month term of imprisonment, in guideline level 38, due to the seized drug amount.

d. Direct Review

Pursuant to the First Circuit Court of Appeals' published opinion in U.S. v. Matos-Luchi 627 F.3d 1 (2010), upon Movant's counsel having submitted several appellate issues, the First Circuit held as to 1) Whether Movant's possession of the drugs, with intent to distribute, occurred on board a "vessel

4

subject to the jurisdiction of the United States", 46 U.S.C.
§70503(a)(1), the Circuit held this Court to be "correct" with its
determination that the "yola" is a "vessel without nationality",
Matos-Luchi, ante, at 4. Likewise, the Circuit, in viewing the
issue of whether the "yola" is a stateless vessel, the First
Circuit held, "retrospectively", how the above mentioned vessel
"had various links to the Dominican Republic", Matos-Luchi, Id. 5 ,
specifically, since the crew members are Dominican citizens; at
Trial, one of the crew members testified to the "yola" being
registered; and the "yola" before having the mentioned engine
difficulties, was likely heading towards the Dominican Republic,
Id.  . However, the Circuit Court held how because the questioned
vessel merely "has associations with another state", it is not
enough to limit the U.S. enforcement authorities' power, Id.  .
In line with the previously submitted issue, the First Circuit
conceded, in its analysis, that had the word "'aboard'" in
46 U.S.C. § 70502(d)(1)(B)'s language been "given its common
meaning of 'on board'", because the "questioning was aboard the
Dominican cutter rather than the defendants' yola", the above
mentioned case would not have arguably fit within the language
of the above mentioned statute, Id. 6. But because "neither
'aboard' the yola, nor adjacent to it on the cutter, did any
crew member make an affirmative claim of nationality for the
vessel, nor did the yola fly a flag or carry registry papers
issued by any state", Id.  ; The previously mentioned is sufficient
to include the "yola" as a vessel that is subject to United
States' jurisdiction, Id. at 4.

Following the foregoing analysis, the First Circuit also held, as to the Dominican authorities' informal consent in permitting the U.S. authorities to transfer the Dominican "yola" crew, how said consent "may be an open question", Matos-Luchi, ante,    .

2) In furtherance to the relevant grounds presented in this habeas pleading, the Circuit Court also held, as to the trial subpoena order issued at Movant's request, in order to produce at trial witness Carmelo Matos Rodriguez (Rodriguez), how because "there was insufficient time to get him the necessary documents to travel to the United States", Matos-Luchi, Id. 8, due to the fact that Rodriguez was incorrectly identified by Movant's counsel as a member of the Dominican Coast Guard, when in fact he was a member of the Dominican Direction for Drug Control, the weight of responsibility to be centered on the fact that Movant "never sought a continuance", Id. .

3) Finally, the First Circuit addressed the sentencing issue on whether this Court "failed to understand his discretion to depart downwards under Booker", Id. 9, pursuant to U.S. v. Booker 543 U.S. 220 (2005). In its holding, the Circuit Court held how there is "no indication that the judge misunderstood his authority; rather he simply thought that the [Movant] had offered no persuasive reason for a lower sentence", Id. .

Thereby, based on the submitted Grounds for constitutional violations and the available substantial facts, the argument for relief purposes, in this §2255 pleading, is as follows:

**ARGUMENT**

1] <u>Ineffective Assistance of Counsel</u>

In the U.S. Supreme Court's landmark decision in <u>Strickland v. Washington</u> 466 U.S. 668 (1984), the <u>Strickland</u>, ante, Court held where counsel's error has substantially affected the fairness of the proceeding, and the erroneous act or omission by counsel prejudiced the defense, ineffective assistance of counsel is presumed, see <u>U.S. v. Manon</u> 608 F.3d 126,131 (1st Cir. 2010).

In the context of Habeas petitioners, Movant must demonstrate that counsel Morel's performance, at the different stages of the proceeding, was deficient and that the deficient performance prejudiced the Movant, <u>Samboy v. U.S.</u> 738 F. Supp.2d 190,192 (D.Mass. 2010). As constitutional errors, in a habeas pleading, should be <u>corrected</u> if said errors result in actual prejudice, <u>Brecht v. Abrahamson</u> 507 U.S. 619,623, 637-38 (1993), the "benchmark" of an ineffective assistance of counsel claim is the fairness of the adversary proceeding, see <u>Nix v. Whiteside</u> 475 U.S. 157 at 175 (1986). As held in <u>U.S. v. Cronic</u> 466 U.S. 648, lawyers in criminal cases are "necessities, not luxuries", they are the means through which other rights of the Movant are secured, Id. at 653.

As the U.S. Constitution demands that Movant is entitled to a reasonably competent attorney, see <u>McMann v. Richardson</u> 397 U.S. 759,770 (1970); the core purpose of the previously mentioned counsel guarantee is to assure "assistance", when Movant is <u>confronted</u> with both intricacies of law and the advocacy of the public prosecutor, see <u>Cronic</u>, supra, 654. Thus, the presented

ineffective assistance of counsel claims should demonstrate, that
had it not been for counsel Morel's errors, there is a reasonable
probability that the outcome of the proceeding would have been
different, see Manon, ante, Id. 131. And a reasonable probability,
as previously detailed, is sufficient to undermine confidence in
the proceeding, see Strickland, ante, Id. 694, for determining a
fair process. In light of the aforementioned the submitted Grounds
are supported by the following facts and legal interpretation:

> 2] Whether Movant's Counsel was Ineffective for
> not Pleading for a Continuance in order to
> Produce a Subpoenaed Witness?

As a trial subpoena was executed by the presiding Court
to produce the witness Carmelo Matos Rodriguez, [Doc. No. 139],
accordingly, due to the fact that the above mentioned subpoenaed
witness was a government official from the Dominican Republic,
whom could settle an issue to be argued at trial, on direct review,
Movant's counsel argued how the Respondent "denied [Movant] a
fair trial by failing to produce the only witness allegedly in a
position to settle the identification issue", Matos-Luchi 627
F.3d at 8. The Circuit Court held the above mentioned appellate
issue not to be "evident in this case", Id. .

Rather, the Circuit Court shifts the weight of deficient
performance on the defendants, Id., as to the failure to produce
the subpoenaed witness. The Circuit Court held how the "government
attempted to secure his presence at trial. But the defendants
incorrectly identified Matos Rodriguez as a member of the 'Dominican
Coast Guard' when he was in fact with the Dominican equivalent
of the Drug Enforcement Agency", Id. . Because Movant was

represented by counsel Morel when the subpoena was executed by the presiding Court, the burden of duty is on Movant's counsel, see Cronic 466 U.S. at 653. The Circuit Court having acknowledged that the foregoing identification error was "discovered" and the subpoenaed witness "located, there was insufficient time to get him the necessary documents to travel to the United States", Matos-Luchi, ante, Id. 8.

As to the above mentioned analysis, the First Circuit holds, conclusively, how "defendants never sought a continuance", Id. . This Circuit has held, in reference to the pleading for a continuance, how because there is "no mechanical test", each case must be evaluated on its own facts, see U.S. v. Saccoccia 58 F.3d 754,770 (1995). In U.S. v. Rodriguez-Duran 507 F.3d 749 (1st Cir. 2007) the Circuit Court held as to the above mentioned inquiry the relevant factors to be considered before granting a motion for continuance. The Rodriguez-Duran, supra, Court held factors to be considered include "reasons contemporaneously presented in support of the request, the amount of time needed for effective preparation, the complexity of the case, the extent of inconvenience to others if a continuance is granted, and the likelihood of injustice or unfair prejudice attributable to the denial of a continuance", Id. 763.

In the case before this Court, counsel Morel ineffectively failed to request a continuance, based on an error which may be reasonably attributed to the defense. As the Strickland Court 466 U.S. 668 has held that a competent attorney should conduct a reasonable investigation of the facts and law available, for a

fair proceeding. The presiding Court should consider evaluating the challenged conduct of counsel Morel's failure to plead for a continuance, the minute or point in time "the error was discovered and Matos Rodriguez located", Matos-Luchi 627 F.3d at 8.

As is, unlike the case in Lee v. Kemna 534 U.S. 362 (2002), witness Carmelo Matos Rodriguez was a subpoenaed witness that was "located" but "there was insufficient time to get him the necessary documents to travel to the United States", Matos-Luchi, supra. In an effort to secure a fair adversarial proceeding, counsel Morel, in exercising his duty as a reasonably competent attorney, should have pleaded for a continuance based on witness Matos Rodriguez's availability but then present traveling complications, for timely adhering to the judicial proceeding.

In viewing counsel Morel's demeanor for not pursuing a continuance, counsel Morel's negligent act deprived the Court, at trial, of relevant information concerning the interrogation effected by Dominican Republic's National Direction for Drug Control's personnel aboard the Dominican cutter with the "yola" crew, [Doc. No. 143, p. 10]. As witness Matos Rodriguez is a member of the National Direction for Drug Control, one of the fishermen from the questioned "yola", Manolo Soto Perez, testified at trial, how upon being found by the Dominican cutter, it was the subpoenaed witness whom received the "yola" crew in the above mentioned cutter, [Doc. No. 143, p. 83-84]. Not only did Matos Rodriguez "greet" the "yola" crew, but, according to Manolo Soto Perez (Perez), the subpoenaed witness was familiarly acquainted with Perez, [supra].

Based on the above mentioned information available through

the established record, in conjunction with Movant submitting how witness Matos Rodriguez's testimony would have <u>shed light</u> on the fact that Movant and the other "yola" crew members are <u>known</u> fisherman throughout the water area where the offense conduct took place; The Movant pleads to this Court, aside for the fact that its executed order for a subpoena was not complied with even though Matos Rodriguez was "located", to consider the importance of the <u>unknown</u> context of the Dominican Drug Control's interrogation with the "yola" crew and the background information subpoenaed witness Matos Rodriguez would have provided on behalf of the defense. In considering the factors this Court would have taken into account under <u>Rodriguez-Duran</u>, ante, Id. 763, had counsel Morel moved the presiding Court for a <u>continuance</u> in order to produce the above mentioned subpoenaed witness, there is a reasonable probability that the <u>weight</u> of the evidence provided by the Government, would have <u>diminished</u> in value, for a verdict of guilty beyond a reasonable doubt, thus, subjecting the instant case to a <u>fair</u> and <u>just</u> adversarial process; had Matos Rodriguez been effectively brought before this Court to provide the subpoenaed testimony.

   3] Whether Movant's Counsel was Ineffective for
      not Pleading for a Substantive Downward
      Departure to the Court when the Sentencing
      <u>Record Demonstrates Merit?</u>

      The Movant, respectfully, submits in support of the presented above mentioned Ground, how the First Circuit in addressing the appellate issue on whether the presiding Court "failed to understand his discretion to depart downwards under <u>Booker</u>", <u>Matos-Luchi</u> 627 F.3d at 9; held there to be no <u>indication</u>

that this Court misunderstood its authority pursuant to U.S v.
Booker 543 U.S. 220 (2005)[3], Matos-Luchi, ante, Id. . The Circuit
Court in finding basis for the foregoing holding cites this
Court's statement on how "'[t]here is nothing before the Court
that would allow [it] to make any meaningful exercise of any
additional sentencing factor under [18 U.S.C. §] 3553(a), because
nothing of the sort has been argued'", Id., [Doc. No. 165, p. 9].

   As noted above, the presiding Court does not consider any
substantive argument, since "nothing of the sort has been argued",
supra. In Glover v. U.S. 531 U.S. 198 (2001) the U.S. Supreme
Court held how an erroneous sentencing determination which unlawfully
increases a prison sentence, establishes prejudice, for an
ineffective assistance of counsel claim, see also unpublished
opinion, citing Glover, supra, Miranda-Severino, 2009 U.S. Dist.
LEXIS 55468, (D.P.R. June 20, 2009).

   In viewing the established record, the First Circuit has held
the manner in which Supreme Court precedents are to be applied
to Booker's, supra, holding in order to provide for a reasonable
sentence, see U.S. v. Rodriguez 527 F.3d 221,224 (2008); see also
Title 18 U.S.C. §3742(e).

---

3] In U.S. v. Booker 543 U.S. 220 (2005) the U.S. Supreme Court held the
United States Sentencing Guidelines' (USSG) mandatory nature to be
unconstitutional. As a remedy to the above mentioned holding, the Supreme
Court preserved the USSG applications only to be advisory. Thus, being
the USSG is now only to be considered in determining a sentence, by a judge.
The standard of review is reasonableness, see 18 U.S.C. §3742(e). In
measuring the reasonableness of an imposed sentence under a Booker regime,
a reviewing court looks first at the procedural reasonableness, see
Rita v. U.S. 551 U.S. 338 (2007), then the substantive reasonableness,
see Gall v. U.S. 552 U.S. 38 (2007). Nevertheless, should the Sentencing
Court reasonably disregard the USSG's applications it may do so in
imposing its sentence, see Kimbrough v. U.S. 552 U.S. 85 (2007).

During the Sentencing Hearing, the Guidelines level Movant and the other offenders were exposed to was level 38 (235-293 months), [Doc. No. 165, p. 3-5]. The above mentioned recommendation was based on the drug quantity involved in the offense conduct, [Doc. No. 165, p. 4]. However, the Court in exercising its discretion held how "235 months is a lot of time", [Doc. No. 165, p. 8].

The above mentioned holding by the presiding Court is based on the fact that because of the offenders' acts and the testimony provided by Manolo Soto-Perez and Ramon Carrasco-Carrasco, the Government asked for a sentence "in the mid range" of the above mentioned guidelines level, [Doc. No. 165, supra]. Inclusively, this Court holds, as a supportive factor, to not increase the sentence to more than 235 months, how "by the time these guys serve their sentence, perhaps you and I will be retired", [Doc. No. 165, p. 8-9], see Title 18 U.S.C. §3553(a)(2)(C). Based on this Court's above mentioned analysis the likelihood of recidivism is countered by a 235 month sentence. Taking into consideration the previously expressed, the Movant suggests that the possible maximum sentence was "capped" at 235 months, based on the presiding Court's discretion. However, being the low-end of the available procedural calculation in guideline level 38 is 235 months, the Court, having not heard any argument whatsoever to warrant a substantive sentence, considering the factors announced in Title 18 U.S.C. §3553(a), sentenced Movant to 235 months, [Doc. No. 165, p. 9-10].

As it pertains to the above mentioned offenders whom testified at trial, the presiding Court determined that "they lied", while

on the witness stand, [Doc. No. 165, p. 6-7 & 9]. This Court
determined that both Manolo Soto-Perez (Perez) and Ramon Carrasco-
Carrasco (Carrasco) "lied when they testified about their
purposes on board" the "yola" boat, [Doc. No. 165, p. 9]. In the
foregoing analysis by this Court, this Court also notes how the
Pre-Sentence Investigative Report (PSR) does not recommend any
available adjustments, for having testified at the trial, [supra].
Having considered the aforementioned information on the record,
this Court decides to leave the procedural calculation "the way
it is", and not apply an upward adjustment to Perez and Carrasco
for having testified at trial, [supra], thus, sentencing all
the offenders to 235 months.

Movant, relying on the sentencing record, [Doc. No. 165], to
challenge counsel Morel's performance during the Sentencing Hearing
and to establish prejudice, respectfully, submits that had
counsel Morel been a competent attorney and conducted a reasonable
investigation of the law available, counsel Morel, based on the
foregoing determinations by the presiding Court, could have
pleaded to the Court for a substantive sentence, pursuant to
Title 18 U.S.C. §3553(a).

As is, even though Perez and Carrasco falsely testified at
trial, the above mentioned offenders were sentenced to the same
prison term Movant received. The mentioned disparity between the
offenders has prejudiced the Movant, pursuant to Title 18 U.S.C.
§3553(a)(6). For starter's, under a procedural calculation, based
on this Court's findings, the testifying offenders would be
considered for an obstruction of justice upward adjustment, pursuant

14

to §3C1.1 in the United States Sentencing Guidelines (USSG). The
previously mentioned USSG adjustment calls for a two-level
increase to the established guideline level, based on the offense
conduct. Had the Court considered adjusting the obstruction of
justice enhancement for falsely testifying at trial, Perez and
Carrasco would be exposed to an advisory guideline level of 40
(292-365 months). But because, as the record reflects, this Court
held 235 months to be "a lot of time", [Doc. No. 165, p. 8], this
Court decided to leave the procedural calculation the way it was
recommended, [Doc. No. 165, p. 9].

In Gall pursuant to Gall v. U.S. 552 U.S. 38 (2007), the Gall
Court, ante, held how in considering a substantive sentence, a
Sentencing Court should consider the totality of the circumstances.
See U.S. v. Rodriguez 527 F.3d at 224. In considering the totality
of the circumstances, Movant, respectfully, submits that had
counsel Morel pleaded to the Court for a deviation of the 235
month sentence, based on the disparity between Movant and the
other offenders whom testified, there is a reasonable probability
that the outcome of the sentence would have been different, but
because, as this Court held, "nothing of the sort has been argued",
[Doc. No. 165, p. 9], Movant is prejudiced.

Viewing the aforementioned argument, counsel Morel, upon
submitting a consideration of the disparity between Movant and
the other two offenders, pursuant to Title 18 U.S.C. §3553(a)(6),
could have suggested to the Court that based on the fact that
a two-level increase, pursuant to §3C1.1, was not considered in
both Perez and Carrasco's sentence, even though this Court held

15

they falsely testified, [Doc. No. 165, p. 6-7 & 9], at trial; This Court could have tailored Movant's 235 month sentence, since he did not testify or falsely testify at trial. In pleading for a deviation from the 235 month term of imprisonment, counsel Morel could have suggested, based on the record, that a two-level decrease from level 38 would serve Title 18 U.S.C. §3553(a)(6)'s purpose. As guideline level 36 (188-235 months) sets 235 months at the top of the guideline range, and this Court held 235 months to be a lot of time, counsel Morel could have pleaded for a 188 month sentence, for Movant not having falsely testifed or testified at trial. Counsel Morel would have prevailed in seeking a reasonable and just sentence with the above mentioned quantified variance analysis suggested by the Movant, based on the established record.

> 4] Whether Movant's Appellate Counsel was
> Ineffective for not having Pursued Further
> Review of the Statutory Interpretation Issue?

Movant, in light of the First Circuit's holding in this case's published opinion, U.S. v. Matos-Luchi 627 F.3d 1 (2010), submits the argument in support to the above mentioned presented ground, in the §2255 pleading, for an ineffective assistance of counsel claim during appellate review.

It has been held, as to the above mentioned claim, that "tactical choices regarding issues on appeal are properly left to the sound judgment of counsel", Jones v. Barnes 463 U.S. 745,751 (1983). In tune with the foregoing, counsel Morel is "not required to raise every non-frivolous issue", but counsel Morel should select among them to maximize the likelihood of success on

merits, see <u>Lattimore v. Dubois</u> 311 F.3d 46 at 57 (1st Cir. 2002). As counsel Morel's pursuit of success should be "objectively reasonable", on direct review, see <u>Smith v. Robbins</u> 528 U.S. 259 at 285 (2000), the Movant submits that counsel Morel should have pursued <u>further</u> appellate review of the First Circuit's panel decision in <u>Matos-Luchi</u>, ante.

In particular to the above mentioned argument for an ineffective claim, the Circuit Court, in issuing its holding, as to the statutory language interpretation of the charging offense, see Title 46 U.S.C. §70502(d)(1)(B)(Defining vessel without nationality, as announced in Title 46 U.S.C. §70502(c)(1)(A), for jurisdiction purposes, to comply with the charging offense, see Title 46 U.S.C. §70503(a)(1).); The Circuit Court held how being the "questioning was **aboard** the Dominican cutter rather than the [Movant's] yola" (emphasis added) <u>arguably</u> the statutory language of the mentioned Title 46 U.S.C. §70502(d)(1)(B) would <u>not</u> fit with the above mentioned questioning, see <u>Matos-Luchi</u>, Id. 6. The First Circuit's <u>basis</u> for previously holding so, is reliant on the understanding that should the word "aboard" in 46 U.S.C. §70502(d)(1)(B)'s construction be "given its **common meaning** of 'on board'", then the above mentioned analysis would stand (emphasis added), Id. .

Based on the above mentioned holding, the Circuit Court <u>reconciles</u> its expressed understanding by expressing how the word "aboard", in nautical contexts, also means "'alongside of'", thus, accordingly, the Circuit Court held Movant was arguably "alongside of the yola", when being <u>questioned</u>, see <u>Matos-Luchi</u>, Id. 6, footnote 7.

The Movant, relying on the available record, submits counsel

Morel could have, based on the ambiguity of the previously mentioned word, pursued further review for an en banc determination, pursuant to Rule 35 in the Fed. R. of Appellate P. or a writ of certiorari in the U.S. Supreme Court.

Movant, in furtherance, respectfully submits, as to the foregoing argument, how it has been held, for purposes of legislative intent, when construing a statute, courts are to look to its terms to determine its meaning, see U.S. v. Alvarez-Machain 504 U.S. 655 at 665 (1992); see also U.S. v. Restrepo 676 F. Supp. 372 (D.Mass. 1987).

Had counsel Morel conducted a reasonable investigation of the facts and law, counsel Morel, in assessing the First Circuit's holding how "aboard", in 46 U.S.C. §70502(d)(1)(B) means "'alongside of'", in order to hold how Movant was alongside of the vessel when being interrogated by the U.S. authorities; Counsel Morel, upon viewing the related statutes in Title 46 (Maritime Drug Law Enforcement) could have reasonably argued that "aboard", within 46 U.S.C. §705029(d)(1)(B) statutory construction means "on board a passenger vehicle, as a ship, train, or aircraft", Webster's II, New Riverside University Dictionary, by Houghton Mifflin Company, (1984)[4].

---

4] It is noteworthy to mention that the versions cited by the First Circuit to define the word "aboard" are publications issued after the enactment of the Maritime Drug Enforcement Act (1986), Matos-Luchi 627 F.3d at 6, footnote 7. Whereas, the version cited by Movant was published before the enactment of the above mentioned relevant Act. See also Circuit Justice Lipez's dissent in Matos-Luchi, supra, for a generalized description of the said Act's history.

Since the First Circuit panel concedes there are two meanings to the word "aboard", Matos-Luchi, 627 F.3d at 6. The previously mentioned holding raises an issue of ambiguity pursuant to the rule of lenity, see U.S. v. Bass 404 U.S. 336 (1971); see also U.S. v. Ribas Dominicci 899 F. Supp. 42,46 (D.P.R. 1995). Counsel Morel could have pursued the above mentioned application of law, on the following suggested reasonable analysis.

Movant, respectfully submits that in Bass, supra, the U.S. Supreme Court held how "the rule of lenity is based on two points, first, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed', second, 'legislators and not courts should define criminal activity'", Id. 348. In line with the mentioned rule, the Bass Court held how when there is an ambiguity in a criminal statute, doubts are resolved in favor of the Movant, Id. .

Had counsel Morel viewed Title 46 in its entirety, as Movant was charged with Title 46 U.S.C. §§70502(c)(1)(A), 70503(a)(1), 70504(b)(1), & 70506(b), [Doc. No. 14], counsel Morel would have noted, as Movant suggests, that the Circuit Panel's holding as to the definition of the word "aboard" does not harmonize with Title 46's legislative intent.

For example, in Title 46 U.S.C. §70501, Findings and declarations, in relevant part, the statute reads "Congress finds and declares that (1) trafficking in controlled substances aboard vessels is a serious international problem". Likewise, in harmony with the above mentioned finding and declaration, 46 U.S.C. §70503(a)(1),

19

in relevant part, reads how "an individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance **on board a vessel**". (emphasis added).

Should the Circuit Court's holding be applied, <u>similarly</u>, to 46 U.S.C §70501, then in relevant part, the statute would be <u>concerned</u> with the "trafficking in controlled substances [alongside of] vessels", thus, <u>defeating</u> 46 U.S.C. §70503(a)(1)'s purpose or at least <u>conflicting</u> with its language.

In <u>Matos-Luchi</u> 627 F.3d 1, the Circuit Court supports its holding, as to the <u>correct</u> definition to be applied for the word "aboard", by expressing how "to read the MDLEA more restrictively would mean that the master and crew need only carry no papers and jump overboard to avoid having their vessel classed as stateless", <u>Matos-Luchi</u>, supra, at 6-7. Counsel Morel could have <u>easily</u> contested the foregoing holding by arguing how, in the instant case, U.S. Coast Guard officer Richard K. Young (Young), testified how after the drug bales were <u>jettisoned</u> by the "yola" crew, the investigating authorities would "rather receive the cargo, as opposed to allow it to drift away and lose position of it", [Doc. No. 140, p. 74]. Officer Young even <u>details</u> the manner in which the drug cargo would be "rescued", [supra]. Based on the aforementioned record and the Circuit Court's above mentioned holding, counsel Morel could have compared the "value" of a human life to that of a drug cargo. Thus, should a master and crew "jump ship", the authorities could just as well place them back on their vessel, using the same techniques applied to

"rescue" a drug cargo on high seas. As Circuit Justice Lipez
held in the dissenting opinion, as to the use of the word "aboard"
in the Maritime Drug Law Enforcement Act (MDLEA), "Congress had
the ordinary usage of the word in mind", Matos-Luchi, 627 F.3d
at 20, footnote 26.

Aside for the previously mentioned argument, the Circuit Court
nevertheless, supports its position by holding how "neither
'aboard' the yola, nor adjacent to it on the cutter, did any crew
member make an affirmative claim of nationality for the vessel, nor
did the yola fly a flag or carry registry papers issued by any
state", Matos-Luchi, supra, Id. 6. Counsel Morel, based on the
trial record, [Doc. No. 140-49], could have presented the vital
fact that the U.S. authorities abandoned its pursuit of the
"yola" in order to retrieve the drug cargo, [Doc. No. 140, p. 74].
As of consequence, a Dominican patrol boat went to "assist" in
the detention of the suspected "yola" crew, [supra]. It was the
Dominican patrol boat that formally encountered the "yola" crew,
[Doc. No. 140, p. 75-76] & [Doc. No. 143, p. 7-8]. Not only did
the Dominican patrol cutter encounter the "yola" crew, they also
seized the "yola" and transferred its crew aboard the mentioned
cutter, [Doc. No. 143, p. 9].

It was several hours later that the U.S. authorities visit
the Dominican cutter, where two fishing groups are seized, [Doc.
No. 140, p. 77 & 79]. According to the Dominican authorities,
the coordinates supplied by the U.S. authorities, initially,
caused the seizure of the first fishing group, [Doc. No. 143,
p. 4-6], then afterwards other coordinates were given to the

Dominican cutter by U.S. authorities, [Doc. No. 143, p. 7-8].

It was the second provided coordinates that located the "yola" crew. Had Counsel pursued an argument as to the statutory interpretation, counsel Morel could have submitted for further review how U.S. authorities, at high seas, should be aware of the procedures to be followed, under U.S. law, for the enforcement of drug trafficking. As the U.S. authorities asked the Dominican authorities to "assist" them in the capture of the "rogue" boat, [Doc. No. 140, p. 74], the U.S. authorities, could have also petitioned the Dominican cutter to seize the "yola" and tie it to its stern, as the Dominican authorities ultimately did, with the "yola's" crew aboard, until the U.S. authorities arrived, for investigation purposes. The previously mentioned rationale complies with 46 U.S.C §(d)(1)(B)'s language, but because the U.S. authorities failed to inform the Dominican authorities to apply the above mentioned procedure, the Dominican authorities transferred the "yola's" crew to its cutter, [Doc. No. 143, p. 9-10]. Aside for the fact that Movant's "yola" was adrift since it "didn't have any gas", [supra, p. 8], upon the "yola" being secured, [supra, 10] to the cutter, there is no evidence to suggest that the above mentioned "yola" was sinking, that a crew mwmber was experiencing medical difficulties, or that the weather condition (i.e hurricane, storm, etc.) merited, under exceptional circumstances to transfer Movant and the other crew members to the Dominican cutter.

As Circuit Justice Lipez held in the dissenting opinion, Movant submits that "the majority correctly holds, Congress did

intend" for the examples announced in 46 U.S.C. §70502(d)(1)(B)
"to be exhaustive", Matos-Luchi, 627 F.3d at 15. Clearly the
previously mentioned holding can be regarded to affect vessels
under exceptional circumstances. In this case, it was the U.S.
authorities whom 1) abandoned the pursuit of the suspected "yola",
in order to retrieve the jettisoned drug cargo and 2) failed to
properly instruct the assisting Dominican authroties, in
compliance with 46 U.S.C. §70502(d)(1)(B)'s language, to simply
secure the "yola" to its cutter and leave its crew in the
mentioned fishing boat, while the U.S. authorities arrive for
investigation and jurisdiction purposes. In conjunction with
the instant argument, counsel Morel could have, also, entertained
submitting the open question on how the Dominican authorities'
"informal consent" is enough to transfer Dominican nationals
from a Dominican cutter to U.S. authorities, for prosecution
purposes, see Matos-Luchi, supra, at 7.

  As to the informal consent issue, the Circuit Court held it
to be an "open question", Id. 7. In seeking relief, counsel
Morel could have submitted said issue for further review.
Though factual that consent is a well established basis of
jurisdiction to prescribe under international law, see
U.S. v. Robinson 843 F.2d 1,4 (1st Cir. 1988). Said consent
may be proved through "certification of the Secretary of State
or the Secretary's desinee", 46 U.S.C. §70502(d)(2); see also
U.S. v. Angulo-Hernandez 565 F.3d 2 (1st Cir. 2009);
U.S. v. Normandin 378 F. Supp.2d 4 (D.P.R. 2005). However,
said requirement is available when "the master or individual

in charge" of the vessel in question makes a claim of registry or nationality, 46 U.S.C. §70502(d). In the instant case, according to the trial record, the "yola" crew was interrogated, upon boarding the Dominican cutter, by Dominican authorities, [Doc. No. 143, p. 10]. Whether Movant and the other crew members of the seized "yola" made a claim of nationality or registry to the Dominican authorities is still unknown, since the subpoenaed witness was never brought before the Court. However, according to Perez ("yola" crew member) the "yola" was registered in the Dominican Republic, [Doc. No. 143, p. 73]. What is known is that the "yola" crew members claimed being Dominican nationals, see Matos-Luchi 627 F.3d at 2. Because, technically, the "yola" crew was under Dominican jurisdiction when boarding the cutter, counsel Morel could have submitted that the question to determine whether the "yola" was a vessel of Dominican nationality or registry, should have been verified by the Dominican authorities to the U.S. authorities, especially, since the Dominican authorities have the "'primary right'" to prosecute individuals on board a Dominican vessel, see Matos-Luchi, supra, at 19, footnote 23 (dissenting opinion). Contrary to the prviously mentioned, U.S. authorities were permitted to visit the Dominican cutter and interrogate the "yola" crew members. Counsel Morel could have further argued that U.S. authorities bypassed their authority, by not consulting the Dominican authorities' on the "yola's" nationality or registry based on Dominican law and the performed interrogation.

Had counsel Morel pursued further appellate review based on

the aforementioned presented argument, because of the <u>ambiguity</u>
that lies with the word "aboard" in the MDLEA's statutes and the
<u>irregularities</u> performed by the U.S. authorities to <u>secure</u> the
Movant's vessel's jurisdiction, the foregoing appellate holdings
should have been submitted for an en banc determination to the
First Circuit or for the issuance of a writ of certiorari to the
U.S. Supreme Court. Particularly since it would be a procedural
right that any competent attorney, based on the Circuit's
holdings, would have exercised.

**CONCLUSION**

WHEREFORE, based on the foregoing Memorandum support of law to
the presented Grounds in Movant's §2255 pleading, the Movant
respectfully asks the presiding Honorable Court, in considering
the established record and the Circuit's holdings, to grant the
relief it deems just for the presented ineffective assistance of
counsel claims.

Epifanio Matos L
Epifanio Matos-Luchi,
propia persona.

**OATH**

I, Epifanio Matos-Luchi, do hereby attest under the penalty of Perjury that the foregoing Memorandum of Law In Support of §2255 Motion to Vacate, Set Aside, or Correct Conviction/Sentence is true and correct, to the best of my knowledge and capabilities. Likewise, I am a Layman in American Jurisprudence whom has been assisted in the drafting of the said pleading, being I do not understand or command the English language.

Date: 11-30-11

Epifanio Matos L

Epifanio Matos-Luchi,
Reg. No. 31216-069

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT, a true and correct §2255 Motion along with the above mentioned Memorandum of Law In Support of §2255 Motion to Vacate, Set Aside, or Correct Conviction/Sentence has been given to a Bureau of Prisons official on this 30 day of November, 2011 for forwarding to the following addresses:

U.S. District Court
District of Puerto Rico
Federico Degetau Fed. Bldg.
150 Carlos Chardon Ave.
Rm. 150
San Juan, P.R. 00918

AUSA Timothy Henwood & AUSA
Elba Gorbea
U.S. Attorney's Office
350 Carlos Chardon St.
Suite 1201
Hato Rey, P.R. 00918

Respectfully submitted,

Epifanio Matos L

Epifanio Matos-Luchi
Reg. No. 31216-069
FCI Fort Dix
P.O. Box 38-Unit 5752
Fort Dix, N.J. 08640

26

CERTIFIED MAIL

7010 1870 0000 0555 1273

Epifanio Matos-Luchi
Reg. No. 31216-069
Federal Correctional Inst.
P.O. Box 2000 - Unit 5752
Fort Dix, N.J. 08640

RECEIVED AND FILED

DEC 20 PM 2:57

CLERK'S OFFICE
U.S. DISTRICT
SAN JUAN

The enclosed letter was processed through special mail procedures.
This letter has been neither opened nor inspected. If the writer raises
a question or profit: in over which this facility has jurisdiction, you may
wish to return the material. If the writer encloses correspondence for
forwarding to another address or includes unauthorized items, please
return to the above address.

FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 2000
FORT DIX, NJ 08640

12/7/11

U.S. District Court,
District of Puerto Rico
Federico Degetau Fed. Bldg.
150 Carlos Chardon Ave.
Rm. 150
San Juan, P.R. 00918



